COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | | |
|---|---|---|---|
| JD AUTO CORP., | | § | No. 08-22-00187-CV |
| | Appellant, | § | Appeal from the |
| v. | | § | 384th Judicial District Court |
| MICHAEL H. BELL, | | § | of El Paso County, Texas |
| | Appellee. | § | (TC# 2021DCV0743) |

## SUBSTITUTE OPINION

Appellee Michael H. Bell has filed a motion for en banc reconsideration, or, in the alternative, for panel rehearing of our opinion issued October 13, 2023. We grant rehearing en banc, deny as moot the alternative motion for panel rehearing, and without changing our previous disposition, withdraw our opinion and judgment of said date, and substitute the following opinion.

This is an appeal by Appellant JD Auto Corp. from a final judgment rendered in a bill of review. JD Auto challenged a no-answer default judgment rendered against it in Bell's employment discrimination lawsuit. On appeal, JD Auto contends the trial court erred by granting Bell's motion for summary judgment and denying its cross-motion for summary judgment. For the

reasons that follow, we reverse the trial court's summary-judgment order, and render a bill of review judgment vacating the no-answer default judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The no-answer default judgment

In January 2015, Bell sued JD Auto Corp., a Texas corporation, alleging it committed an unlawful employment practice against him in violation of Texas law. The citation thereafter issued by the district clerk authorized service on JD Auto by serving its registered agent, James A. Dick, IV, at 5800 Montana, or wherever he may be found. To effect service by personal delivery, Bell retained Raymond Holt-Shirley, a civil process server authorized to personally serve citations in El Paso.

In March 2015, Holt-Shirley filed both a return of service indicating that service had not been executed as to "defendant, James Dick IV," and an affidavit in support of a motion for substitute service. The affidavit described Holt-Shirley's unsuccessful attempts to effect service from January 14, 2015, through February 12, 2015. Next, in November 2015, Bell filed a motion for substitute service claiming that "reasonable effective notice" of suit may be given to registered agent Dick and to JD Auto by leaving a copy of the citation, with a copy of the petition attached, either by posting at JD Auto's business address, or by posting copies in the El Paso County Courthouse. Granting Bell's motion, the trial court issued an order on motion for substitute service. The order authorized substitute service by posting a copy of the citation and petition either at: (1) JD Auto's business address; or (2) the El Paso County Courthouse. On December 2, 2015, Holt-Shirley filed a service return certifying the citation was posted in the El Paso County Courthouse in accordance with the law.

In August 2016, the trial court rendered a no-answer default judgment in favor of Bell on liability and damages, ordering that he recover from JD Auto $303,415 in past economic losses and $300,000 in past compensatory damages along with post-judgment interest and costs.

**B.    JD Auto's bill of review attacking the default judgment**

On March 4, 2021, JD Auto filed its original petition for bill of review seeking injunctive relief and requesting the court to vacate the default judgment entered against it on August 10, 2016. Among its claims, JD Auto asserted that Bell never obtained effective or valid service of his employment lawsuit on it, and that it first learned of the employment lawsuit on March 1, 2021, when a detective with the El Paso County Sheriff's Department appeared at its offices to serve a writ of execution. The bill of review urged that a posting at the El Paso County Courthouse was not an effective method of service, or an authorized method under the circumstances; yet Bell only chose that method to purportedly serve JD Auto with process. It maintained the trial court did not obtain personal jurisdiction over it, and thus the default judgment was invalid and of no effect.

JD Auto's petition also contended that, in addition to not obtaining effective service, Bell did not proceed with prompt efforts to attempt to execute on the judgment. It claimed, instead, that Bell intentionally waited more than four years, until December 9, 2020, to file an application for writ of execution. JD Auto then maintained that its later receipt of the writ of execution on March 1, 2021, from the El Paso County Sheriff's Department, was the first knowledge it had that it had been sued or that a judgment had been entered against it. The petition urged that the four-year limitations period to bring a bill of review was tolled due to Bell's extrinsic fraud in securing the default judgment.

In filing his original answer to JD Auto's petition, Bell generally denied each and every allegation and further pleaded that JD Auto's bill of review was barred by limitations, that it failed

3

to exhaust all legal remedies available to it before filing a bill of review petition, and that its unclean hands deprived it of equitable relief.

Bell soon thereafter moved for a traditional summary judgment on two grounds: (1) the bill of review was barred by the four-year limitations period and no extrinsic fraud tolled the running of limitations; and (2) no due process violations supported a collateral attack as service of process was effected on JD Auto in compliance with the terms of a substitute service order authorizing posting at the courthouse or at its business address. Included with his motion, Bell provided affidavits of the process server and of the officer who served the writ of execution, a copy of a Rule 306a notice letter from the district clerk notifying JD Auto of a "Judgment/Order" signed on August 10, 2016, and the complete file from the employment discrimination case. Based on Bell's summary judgment evidence, two affidavits of Holy-Shirley were included: (1) his initial affidavit of March 2015, which was attached to the motion for substitute service in the underlying suit; and (2) a second affidavit of December 3, 2021, which supported the motion for summary judgment in the bill of review action. The 2021 affidavit differed from the 2015 affidavit to the extent the process server averred in the later version that, besides having posted the citation and petition inside a locked glass case on the first floor of the El Paso County Courthouse (as stated in the citation return), he had also posted the documents "on the front, main doors to the front of the show room building at 5800 Montana Avenue[.]"

A period of discovery ensued. Afterwards, both sides filed a flurry of pleadings. First, JD Auto filed an amended petition for bill of review. As a first basis for recovery, it asserted that Bell failed to serve the petition and citation of the employment lawsuit in a manner that would be reasonably effective to provide it notice of his claims as required by due process of law and Rule 106(b)(2) of the Texas Rules of Civil Procedure. It urged that the Texas legislature had long ago

4

prescribed the method of service on an entity when the registered agent could not be served pursuant to the Texas Business and Organizations Code. It thus claimed it was deprived of due process under both the Texas Constitution and the United States Constitution, which rendered the default judgment void as a matter of law. As a second basis of recovery, the petition contended that extrinsic fraud was also apparent on the record, arguing that Bell's process server fraudulently represented he made seven or eight unsuccessful attempts to serve JD Auto, when he actually had made only one attempt at completing personal service on the registered agent at the physical address matching the business location of the auto dealership. It argued it was entitled to a jury trial on its evidence establishing that Bell's extrinsic fraud led to the improper entry of a default judgment that should be set aside in its entirety.

Second, JD Auto filed a competing motion for traditional summary judgment asserting that Bell's attempts at service of citation in his employment discrimination suit did not meet due process requirements given that claimed attempts at both personal and substitute service were not reasonably effective to provide notice of the suit. As supporting evidence, JD Auto attached an affidavit of James A. Dick IV, the president of the business and its registered agent, who averred that he was never served with citation or a copy of Bell's lawsuit, and if he had been served, that JD Auto would have timely and vigorously defended the wrongful termination case on its merits based on Bell's poor performance and failure to follow company policies and procedures. Dick averred he had traveled out of town during the relevant times that Holt-Shirley attempted service at the Montana Avenue business location. Supporting documents were attached to Dick's affidavit to include credit card records, photographs of JD Auto's business location, and some of Bell's employment records. Also, JD Auto attached to the summary judgment motion the pleadings from the employment discrimination suit; a transcript from the default judgment hearing; the process

5

server's 2021 affidavit initially produced by Bell; and deposition excerpts from the process server and detective who served the writ of execution.

Third, JD Auto responded to Bell's motion for summary judgment. Relying on the same evidence as was attached to its own motion, JD Auto argued that a table of key facts demonstrated, at a minimum, that material disputes of fact prevented a grant of summary judgment in Bell's favor.

Fourth, Bell replied to JD Auto's response, and he responded as well to its competing motion. Bell argued that service by posting was permitted under Texas law and satisfied due process concerns where diligent efforts to personally serve were first attempted by plaintiff. As support, Bell relied on the following evidence: (1) Holt-Shirley's 2015 affidavit presented to the trial court in support of the motion for substitute service; and (2) Holt-Shirley's deposition testimony of March 2022. Finally, JD Auto replied to Bell's response.

The trial court granted Bell's motion for summary judgment and denied JD Auto's competing motion without specifying the grounds for its ruling. JD Auto appeals the trial court's summary judgment ruling.

## II. STANDARD OF REVIEW

We review de novo a trial court's grant of a summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A movant for traditional summary judgment "must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law." *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015). When

6

parties bring competing motions for summary judgment, each party has the burden of establishing its entitlement to judgment as a matter of law. *Miles v. Texas Cent. R.R. & Infrastr., Inc.*, 647 S.W.3d 613, 619 (Tex. 2022). When one party's motion is granted and the other's is denied, we "'determine all questions presented' and 'render the judgment that the trial court should have rendered.'" *Id.* (quoting *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000)).

## III. ISSUES ON APPEAL

JD Auto brings three issues on appeal arguing the trial court should have granted its motion for summary judgment and rendered a judgment in its favor—either on its direct attack or its collateral attack—thereby vacating the default judgment against it. In its first issue, it argues it conclusively established that Bell's false representations to the trial court rose to the level of extrinsic fraud, which supported its direct attack seeking to overturn the default judgment. In its second issue, it argues it conclusively established a due process violation occurred, which supported its collateral attack of the default judgment. And relatedly, its third issue argues this Court should reverse the trial court's summary judgment and render judgment in its favor because it conclusively established it was not served with citation, and the default judgment was rendered without service or constitutionally adequate notice as a matter of law.

As a threshold matter, we first consider how we wish to order our discussion, given that the alternative theories presented by the issues raise distinct challenges against the default judgment rendered against JD Auto and in Bell's favor.

## IV. RAISING CHALLENGES AGAINST A DEFAULT JUDGMENT

A default judgment may be sought by a plaintiff when certain prerequisites are met. *See* Tex. R. Civ. P. 239; *see also* Tex. R. Civ. P. 107(h) (providing that "[u]pon such call of the docket,

7

or at any time after a defendant is required to answer," a plaintiff may take a judgment by default against a defendant, if such party has not previously filed an answer, and further providing that the return of service shall have been on file with the clerk for ten days, exclusive of the day of filing and the day of judgment). But, as the Texas Supreme Court recently described, "[d]efault judgments differ from every other kind in a fundamental way: the losing party is wholly absent." *In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 920 (Tex. 2024). To that extent, "[n]o-answer default judgments are disfavored under Texas law." *Id*. (quoting *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020)). Thus, it is well settled that a default judgment may be attacked either directly or collaterally, depending on whether it is void or voidable. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012) (providing that a void judgment can be attacked directly or collaterally, but a voidable judgment can only be attacked directly).

"A direct attack—such as an appeal, a motion for new trial, or a bill of review—attempts to correct, amend, modify or vacate a judgment and must be brought within a definite time period after the judgment's rendition." *Id.* Conversely, a collateral attack, which "seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes[,]" may be brought at any time when a judgment is void. *Id.* at 271–72. Thus, "[t]he distinction between void and voidable judgments is critical when the time for a direct attack has expired." *Id.* Before expiration of that time, however, "the distinction is less significant because— whether the judgment is void or voidable—the result is the same: the judgment is vacated." *Id.*

More specifically, a judgment is void when "the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Id*. There is no set procedure nor time period for bringing a collateral attack against a void judgment. *Id*. at 272–73 (quoting *Peralta v. Heights*

8

*Medical Center, Inc.*, 485 U.S. 80, 84 (1988)) (providing that "a judgment entered without notice or service is constitutionally infirm," and thus some form of attack must be available when defects in personal jurisdiction violate due process). In contrast, the time for bringing a direct attack can range from 30 days for a new trial motion, up to four years or longer—where tolling is applicable— for a bill of review proceeding. *See* Tex. R. Civ. P. 320; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.051. Relevant here, JD Auto attacked the default judgment both directly and collaterally in its bill of review petition.[1]

With limited exceptions not applicable here, "[a] bill of review is an equitable proceeding, brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for a new trial or direct appeal." *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 812 (Tex. 2012). Generally, a defendant seeking a bill of review must show: "(1) a meritorious defense to the underlying cause of action, (2) which the plaintiff[] [was] prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on [its] own part." *Id.* "But when a bill-of-review plaintiff claims a due process violation for no service or notice, it is relieved of proving the first two elements[,] . . . [a]nd the third element, lack of negligence, is conclusively established if the bill-of-review plaintiff can prove it was never served with process." *Id.* (citations omitted); *Caldwell v. Barnes*, 154 S.W.3d 93, 96–97 (Tex. 2004) (per curiam). In other words, "a defendant who is not served with process is entitled to a bill of review without a further showing, because the Constitution discharges the first element, and lack of service establishes the second and third." *Ross v. Nat'l Ctr. for the Emp. of the Disabled*, 197 S.W.3d 795, 797 (Tex. 2006) (per curiam) (citing *Caldwell*, 154 S.W.3d

---

[1] Although JD Auto filed its petition for bill of review after expiration of the four-year limitations period, it argues limitations was tolled due to Bell's alleged false representations concerning reasonable diligence in securing personal service.

at 96–97); *see WWLC Inv., L.P. v. Miraki*, 624 S.W.3d 796, 801 (Tex. 2021) (granting bill-of-review relief to a plaintiff who proved a lack of proper service resulting in an underlying default judgment).

Based on these distinctions between void and voidable judgments, and direct and collateral attacks, we determine we will first address JD Auto's collateral attack on the default judgment. That attack is fully encompassed by its second and third issues. If JD Auto conclusively establishes a violation of its due process rights, it follows that Bell's default judgment would be void, not voidable. *See PNS Stores*, 379 S.W.3d at 271–72 (rejecting a defendant's collateral attack based on due process arguments before turning to its direct attack on the challenged judgment). And if we determine the judgment is void, it becomes unnecessary to consider the first issue, which contends that JD Auto conclusively established the additional elements required of a direct attack on the judgment. *See* Tex. R. App. P. 47.1; *Ross*, 197 S.W.3d at 797.

## V. THE DUE PROCESS VIOLATION

In its second and third issues, JD Auto brings a two-part query asking: (1) is it a due process violation for a plaintiff to seek substituted service on the basis of one attempt at personal service, which was otherwise accompanied by additional actions that facially cannot be considered attempts at personal service; and (2) does entry of a default judgment based on a form of substitute service that failed to give constitutionally adequate notice meet constitutional standards. Ultimately, JD Auto urges that the Court should reverse and render judgment for it on its motion for summary judgment because it argues it demonstrated a due process violation occurred when the trial court rendered a default judgment despite a lack of service or constitutionally adequate notice of Bell's employment lawsuit.

10

In opposition, Bell argues the process server engaged in diligent efforts to find and serve JD Auto's registered agent; and, in any event, further service efforts would have been essentially futile because JD Auto's agent was either out of town or away from headquarters in the period when service was attempted. Bell further argues that JD Auto is not entitled to reversal of the default judgment based on its collateral attack because it effectuated service by complying with the trial court's order to post citation at the courthouse and, additionally, because it also posted said process at JD Auto's business address.

To start, we address the due process requirements for attaining personal jurisdiction over a named defendant.

### A. Applicable law

"The Due Process Clause of the United States Constitution prevents the government from depriving a person of his or her 'property, without due process of law."' *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 188 (Tex. 2022) (quoting U.S. Const. amend XIV, § 1; Tex. Const. art. 1, § 19). Deprivation of property must be preceded by notice and an opportunity to be heard. *Id.* at 189 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). Such "[n]otice must be 'reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.'" *Id.* (quoting *Peralta*, 485 US. at 84). In *Peralta*, the United States Supreme Court held that "a judgment entered without notice or service is constitutionally infirm." *Peralta*, 485 U.S. at 84. There, the Court stated, "'[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action . . . .'" *Id.* (quoting *Mullane*, 339 U.S. at 314). Thus,

11

the "[f]ailure to give notice violates 'the most rudimentary demands of due process of law.'" *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965)).

Personal jurisdiction is a necessary component of a valid judgment and depends "upon citation issued and served in a manner provided for by law." *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)). Trial courts lack personal jurisdiction over a defendant who was not properly served with process. *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020) (citing *Wilson*, 800 S.W.2d at 836). Although courts are to presume that a collaterally attacked judgment is valid, "that presumption disappears when the record establishes a jurisdictional defect." *PNS Stores*, 379 S.W.3d at 273 (citing *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008)). A judgment is void and subject to collateral attack "if the defects in service are so substantial that the defendant was not afforded due process." *Id.* at 275.

In such case, we may look beyond the face of the judgment to determine whether the record before the trial court affirmatively demonstrates the trial court lacked jurisdiction at the time it rendered judgment. *Id.* Specifically, however, we only review "the record before the trial court at the time the trial court rendered the challenged judgment." *Topletz v. Wadle*, No. 05-21-00047-CV, 2023 WL 154878, at *5 (Tex. App.—Dallas Jan. 11, 2023, no pet.) (mem. op). "The record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it . . . exposes such personal jurisdictional deficiencies as to violate due process." *PNS Stores*, 379 S.W.3d at 273. While a complete failure or lack of service violates due process, technical defects in services do not. *Id*.

"Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding." *Mullane*, 339 U.S. at 313. "[I]f personal service can be effected by the exercise of reasonable diligence, substitute service is not to be resorted to." *E.R.*,

12

385 S.W.3d at 564 (quoting *Sgitcovich v. Sgitcovich*, 241 S.W.2d 142, 147 (Tex. 1951)). Reasonable diligence "must include inquiries that someone who really wants to find the defendant would make" and is measured by the quality of the search, not by its quantity. *Id.* at 565 (citing *Mullane*, 339 U.S. at 315).

Applying these principles, the Texas Rules of Civil Procedure provide for personal service through personal delivery of the citation and petition to the defendant or delivery of the same through certified mail. Tex. R. Civ. P. 106(a). Texas law also provides for personal service of a Texas corporation by requiring the corporation to designate and continuously maintain a registered agent for service of process. Tex. Bus. Orgs. Code Ann. § 5.201(a). A plaintiff may serve a corporation's registered agent, its president, or its vice-president in order to perfect service of process on a defendant corporation. *Zhao v. Sea Rock, Inc.*, 659 S.W.3d 119, 127 (Tex. App.— El Paso 2022, pet. denied); Tex. Bus. Orgs. Code Ann. §§ 5.201(b), 5.255(1). A corporation's registered agent may be an individual or a corporation, and, in either case, the registered agent must maintain a business office at the corporation's registered office address. Tex. Bus. Orgs. Code Ann. § 5.201(b)(3). The corporation's registered office "must be located at a street address where process may be personally served on the [corporation's] registered agent." *Id.* § 5.201(c)(1). It is the registered agent's duty to "receive or accept, and forward to the represented [corporation] . . . any process . . . that is served on or received by the registered agent[.]" *Id.* § 5.206(a)(1).

In addition, the Texas secretary of state becomes a corporation's agent for service of process if the corporation's registered agent cannot with reasonable diligence be found at the corporation's registered office. Tex. Bus. Orgs. Code Ann. § 5.251. Other lawful means of service of process are not precluded by the Business Organizations Code. *Id.* § 5.256. But a plaintiff's service of process on the secretary of state, evidenced by a certificate stating that the secretary of

13

state received the process and forwarded it to the registered agent's address, "is considered conclusive proof, absent evidence of fraud or mistake, that process was properly served in compliance with the Code." *Acadian Props. Austin, LLC v. KJMonte Invests., LLC*, 650 S.W.3d 98, 111–12 (Tex. App.—El Paso 2021, no pet.).

The Texas Rules of Civil Procedure also provide for substitute methods of service of process when personal service has not been successful. Tex. R. Civ. P. 106(b). Upon a motion supported by a sworn statement listing any location where the defendant can probably be found and stating specifically the facts showing that personal service under 106(a) has been attempted but has not been successful, a trial court may authorize service: "(1) by leaving a copy of the citation and petition with anyone older than sixteen at the location specified in the statement; or (2) in any other manner . . . that the statement or other evidence shows will be reasonably effective to give the defendant notice of the suit." *Id.*

When substitute service is sought, its form must not only be premised upon evidence that shows it "will be reasonably effective to give the defendant notice of the suit," *id.*, but it also must not be "substantially less likely to bring home notice than other of the feasible and customary substitutes." *Mitchell*, 649 S.W.3d at 189 (quoting *Mullane*, 339 U.S. at 315). To that end, "[w]hile the sufficiency of notice is fact-specific to each case, if notice is not meaningful, constitutional due process requirements are not satisfied." *In re Miramontes*, 648 S.W.3d 590, 601 (Tex. App—El Paso 2022, no pet.). As relevant here, *Mitchell* described, "notice by publication must be scrutinized because 'chance alone' brings a resident's attention to a notice . . . posted on a courthouse door." *Mitchell*, 649 S.W.3d at 191.

14

Whether a court has personal jurisdiction over a defendant is a question of law that we review de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Creaven v. Creaven*, 551 S.W.3d 865, 870 n.6 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

### B. Analysis

#### (1) Lack of reasonable diligence in personal service

In the first part of its second issue, JD Auto argues the trial court erred by ordering substitute service after a lone attempt at personal service. It further urges that phone calls accompanied by actions that are facially inadequate under the circumstances all fail to meet basic standards for reasonable diligence. It maintains that personal attempts to serve process at two addresses that are unproven as being connected to the auto dealership should not be viewed as valid attempts at personal service nor otherwise considered in the diligence inquiry because these alternative "methods" are inadequate as a matter of law. To establish conclusive proof of a violation of due process, JD Auto's motion for summary judgment relied on the following evidence considered by the trial court before rendering a default judgment: the initial citation for service upon JD Auto's registered agent, James A. Dick, IV; Holt-Shirley's affidavit in support of the motion for substitute service; Bell's motion for substitute service; the trial court's order granting substitute service; and the citation for substitute service. Based on this record evidence, we must determine whether Bell's efforts at personal service amounted to reasonable diligence—the type of inquiries that someone who really wants to find a defendant would make—as defined by the quality of the search, not the quantity of efforts. *See E.R.*, 385 S.W.3d at 564. "After all, diligence means truly trying to achieve service—as if one wanted to do it, not merely had to do it." *Texas State Univ. v. Tanner*, 689 S.W.3d 292, 299 (Tex. 2024).

15

First, Holt-Shirley's initial return of service acknowledged that personal delivery was not effected. Mistakenly, however, the return of service noted that "defendant James Dick IV" had not been served with process even though JD Auto, a corporate entity, was actually the named party-defendant. In the blank line intended to describe the diligence used in finding "said defendant," Holt-Shirley wrote on the return's form: "going to office, house, brother James Dick III," as reflective of the efforts taken to effect service. Completing the blank line for the cause of the failure to execute process, he noted: "never seems to be in office or home." For the information received as to whereabouts of the defendant, he added, "out of town/office."

Second, in his motion for substitute service, Bell claimed that service had been unsuccessful on J.D. Auto Corporation, relying on the affidavit of Raymond Holt-Shirley, even though Holt-Shirley had in his return identified the defendant, and his personal delivery attempts to be directed to, James Dick IV. In turn, Holt-Shirley's affidavit averred he believed the residence or office of "Defendant, J.D. Auto Corporation," was at 5800 Montana, El Paso, Texas. Holt-Shirley next averred that he attempted personal service on "Defendant, J.D. Auto Corporation," on at least seven occasions from January 15, 2015, through February 12, 2015, as follows:

- January 14, 2015: He called the car dealership at 5800 Montana to speak with Dick. He spoke with "Melanie Sue, Kristi, or Ali Cherry," or one of the secretaries, who told him Dick was not in town and she did not know when he would return but that she would pass on the information to Dick when he called to check in.

- January 16, 2015: He visited 5800 Montana and spoke with a receptionist on the car dealership's top floor. He said he was there to deliver a set of legal documents to Dick but was told Dick was not there and would be back in about a week.

- January 23, 2015: He again called the car dealership to speak with Dick. A secretary told him Dick was not yet back in town.

- January 30, 2015: He spoke with Dick's brother. Dick's brother told him that Dick did not live at the address in question but gave him an alternate address in New Mexico and said "he was unsure if he was into[,] [sic]" that Dick had been traveling and should have returned by then.

16

- January 30, 2015: He visited the New Mexico address Dick's brother gave him. Finding no one home, he left a business card on the door and told a man he met on the property (who did not speak English) to tell Dick to call him.

- February 4, 2015: He again called the car dealership to speak with Dick. A secretary told him Dick was not there and he "comes and goes as he pleases." She declined to give him another phone number to reach Dick but said she would give Dick his message.

- February 12, 2015: He called the dealership to speak with Dick. He spoke with "Melanie Sue, Kristi, or Ali Cherry," or one of the secretaries, who told him Dick was not in town and she had no date for a return.

Following the list of dates, the affidavit further averred as follows:

For the reasons set forth above, it is impractical to secure personal service on Defendant, Jessica Torres [sic] and I will be unable to do so despite due diligence. Therefore, substituted service is necessary and I believe **J.D. Auto Corporation– AGENT: James Dick IV**, will receive effective notice of this suit by posting copies of the citation and the attached petition in the El Paso County Court House[.]

A close review of each of these entries shows that Holt-Shirley visited the physical address of the registered agent on only one occasion and otherwise relied on phone calls or visits to non-business sites for his subsequent attempts. For example, in what Holt-Shirley called his first attempt at personal service, he learned via a telephone call that Dick was not in town after he spoke to "Melanie Sue, Kristi, or Ali Cherry," or to an unnamed secretary. Two days later, he then went to the address of JD Auto and its registered agent (5800 Montana Avenue) and spoke with "a receptionist" who again reported that Dick remained out of town on business. After his sole visit to the business address, Holt-Shirley next claimed at least five more instances of attempted personal service. Of those five attempts, three were phone calls to "a secretary," or to "Melanie Sue, Kristi, or Ali Cherry," and two were personal visits to alternative addresses located in New Mexico, neither of which were otherwise described as a business location of the dealership or registered agent.

17

The two attempts at other addresses involved contacts the process server made with non-parties at addresses not included in the citation or further explained as places where JD Auto's registered agent could be served. An attempt to find an entity's registered agent at any address other than the entity's registered office is irrelevant to a determination of reasonable diligence. *BLS Dev., LLC v. Lopez*, 359 S.W.3d 824, 827 (Tex. App.—Eastland 2012, no pet.) ("The only relevant attempt of service, for purposes of determining reasonable diligence, is the process server's sole attempt at service on the registered agent at the registered office."). In one attempt, the process server spoke with Dick's brother (or father, the evidence is conflicting) who merely confirmed that Dick did not live at the location provided. Moreover, the process server's affidavit did not in fact state that he personally visited this alternative address, that he knew of any connection between Dick and the address, or that Dick could be found at the location. The process server next claims he asked Dick's brother for a different address. Claiming another "attempt," he next went to the New Mexico location that was provided and told someone who did not speak English to "inform his boss to call [the process server] as [he] had a set of legal papers for him." The affidavit did not establish that Dick could probably be found at this location or that Dick was the non-English-speaker's boss. In addition to being irrelevant, those "attempts" at alternative addresses did not advance the process server any closer toward completing personal service on the registered agent.

Here, the record establishes that Bell knew the identity of JD Auto's registered agent and the location of JD Auto's "residence or office," at 5800 Montana in El Paso. Despite such knowledge, the process server made only one attempt to personally serve the registered agent at

5800 Montana, and he did so only two days after he had been told the agent was out of town.[2] During that visit, Holt-Shirley claimed that after he was greeted by a receptionist or secretary, he simply asked to speak to Dick and reported he was there to deliver a set of legal documents. Although the affidavit further claims that Holt-Shirley was informed that Dick would return in a week or so, none of his remaining entries claim he returned to the known business location to attempt personal service on the registered agent.

Despite the process server's lack of additional attempts at personal service at the registered agent's address, Bell claims Holt-Shirley's other actions demonstrate diligence in attempting to serve JD Auto. We disagree. At best, the process server merely claims he made four phone calls, one of which was made prior to his in-person visit, and each time he claimed he spoke to "one of the secretaries." Neither in any of these calls nor at the in-person visit did the process server indicate to anyone that he possessed documents from a pending lawsuit which he needed to deliver to JD Auto's registered agent. Rather, as to the three contacts in which he detailed his purpose, he merely said he needed to deliver a "set of legal documents" to Dick.

The Supreme Court of Texas has stated that "when a defendant's identity is known, service by publication is generally inadequate." *E.R.*, 385 S.W.3d at 560. Further, we have not been directed to any case supporting the proposition that a single failed attempt at effecting service on a registered agent at an ongoing place of business is sufficient to warrant substituted service through posting. *Compare Ingram Indus., Inc. v. U.S. Bolt Mfg., Inc.*, 121 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding one visit to registered agent's address was

---

[2] Although the dissent determines that Dick was "consistently unavailable," and cites non-binding cases indicating that personal service had become "impossible," we see no evidence in the record properly before us to reasonably infer that Dick was avoiding service or that Holt-Shirley affirmatively claimed that personal service on him was impractical.

reasonably diligent under the predecessor to § 5.251 of the Business Organizations Code where additional visits would have been futile because the address was bad and substitute service was made on the secretary of state); *Acadian Props. Austin*, 650 S.W.3d at 108 (finding no attempts on registered agent were necessary as attempt would have been futile because the address was bad and substitute service was made under Tex. Bus. Org. Code Ann. § 5.251); *J & J Container Mfg., Inc. v. Cintas-R U.S., L.P.*, No. 01-14-00933-CV, 2015 WL 5829667, at *4 (Tex. App.—Houston [1st Dist.] Oct. 6, 2015, no pet.) (mem. op.) (describing at least one attempt to serve the registered agent must be made before resorting to substitute service through the secretary of state); *with Paramount Credit, Inc. v. Montgomery*, 420 S.W.3d 226, 232–33 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (stating one attempt was not sufficient when no name whatsoever was given for the registered agent on the original citation and return); *and Robb v. Horizon Cmtys. Improvement Ass'n Inc.*, 417 S.W.3d 585, 591 (Tex. App.—El Paso 2013, no pet.) (finding one attempt at personal service insufficient when that attempt was no more than hiring detective agency that refused to attempt service due to the only address being a post office box and no attempt at service by certified mail was made).

On this record, we conclude Holt-Shirley's affidavit attempts to establish quantity, rather than quality, of service attempts. *See E.R.*, 385 S.W.3d at 565. We hold that reasonable diligence at providing notice was not shown under the circumstances. The fact remains—the identity of JD Auto's registered agent and the address for its ongoing place of business were continuously known to Bell. Although the citation return notes that Dick "never seems to be in the office[,]" the process server does not otherwise allege that Dick was evading service, nor that he had a basis for reaching such conclusion. An employee at the business greeted Holt-Shirley or answered his calls for every effort he made to contact the registered agent.

20

Under these circumstances, the efforts undertaken to personally serve JD Auto's registered agent fall short of efforts that are "desirous of actually informing" a defendant of a lawsuit or those a person "might reasonably adopt" to accomplish notice.[3] *See Mullane*, 339 U.S. at 315. We thus determine the evidence before the trial court at the time of the request for substituted service conclusively established that Bell had failed to exercise reasonable diligence in his attempts to actually serve JD Auto at its operating business location before he resorted to substituted service. *See Sgitcovich*, 241 S.W.2d at 147; *Mitchell*, 649 S.W.3d at 189.

### (2) Lack of reasonable effectiveness in form of substitute service

Moving to the next part of JD Auto's second issue, and also addressing the third issue, we agree the trial court did not acquire personal jurisdiction over JD Auto prior to rendering a default judgment. That is to say, in addition to a lack of reasonable diligence in obtaining personal service, Bell's chosen method of substitute service did not meet the requisites of due process and thus resulted in a void judgment.

In concluding his substitute-service affidavit, Holt-Shirley averred, without explanation, that it was "impractical to secure personal service on Defendant, Jessica Torres," and that he would be unable to do so despite due diligence.[4] Based on the efforts recounted there, he asserted that

---

[3] We find this situation comparable to one recently considered by the Texas Supreme Court. It noted that in a default situation, a plaintiff "may be fully aware that a defendant is unaware [of pending litigation]." *In re Lakeside Resort*, 689 S.W.3d 916, 921 (Tex. 2024). There, after a defendant failed to appear, the plaintiff obtained a default judgment "then waited just long enough . . . to obtain the abstract of judgment and begin execution so that the trial court's plenary power had run *and* the time to file even a restricted appeal had passed." *Id.* The plaintiff then "instantly provided clear notice . . . using an address at which [it] knew [the defendant] would receive correspondence" though the plaintiff had not used that address to give notice of suit to the defendant prior to its default. *Id.* The Court concluded, "[c]ircumstances like these illustrate why default judgments are disfavored." *Id.*

[4] Substitute service under Rule 106(b) must be premised on an affidavit which demonstrates its necessity. *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990). Here, the sentence referring to "Defendant Jessica Torres," with no stated connection to JD Auto, is the only instance in which Holt-Shirley claims impracticality to secure personal service despite due diligence. As a result, the affidavit patently failed to establish impracticality in personally serving JD Auto despite claims of due diligence. Nonetheless, we refrain from expressing an opinion as to whether this deficiency

21

substitute service was necessary, and he believed JD Auto would receive effective notice of the suit "by posting copies of the citation and the attached petition in the El Paso County Court House[.]" Citing Holt-Shirley's affidavit, Bell's motion sought substitute service either by posting at JD Auto's business address or by posting at the El Paso County Courthouse.

Rule 106(b)(2) encompasses the due process requirement in that it allows substitute service, under certain circumstances, in any other manner that the evidence shows "will be reasonably effective to give the defendant notice of the suit." Tex. R. Civ. P. 106(b)(2). To meet the due process threshold reflected in Rule 106(b)(2), a party resorting to substitute service must produce evidence showing his selected method was reasonably calculated to apprise a party of the suit. *Id.* Here, the record must show, then, that the posting at the courthouse was reasonably calculated to apprise JD Auto of the suit. *See Mullane*, 339 U.S. at 314; *Mitchell*, 649 S.W.3d at 189.

Whereas Bell's motion for substitute service asserts "[r]easonable effective notice . . . may be given to [Dick and JD Auto]," either by posting at JD Auto's business address or by posting in the El Paso County Courthouse, the only information supporting reasonably effective notice by posting is a conclusory statement without a factual basis. In the process server's affidavit, it provides: "I believe J.D. Auto Corporation–Agent: James Dick IV, will receive effective notice of this suit by posting copies of the citation and the attached petition in the El Paso County Court House, El Paso, Texas." The process server's affidavit fails to include facts detailing why such posting would be reasonably effective to give JD Auto notice of the suit. *See Mitchell*, 649 S.W.3d at 192; *Mullane*, 339 U.S. at 315; *see also Wilson*, 800 S.W.2d at 836 ("Since the 1981 change in

constitutes a technical defect in service or a complete failure violative of due process, *see PNS Stores*, 379 S.W.3d at 273–74, as we conclude the process server did not otherwise use reasonable diligence in attempting personal service before resorting to substitute service.

22

Rule 106(b) the courts have consistently held that substitute service may not properly issue on a motion supported by an affidavit that is conclusory or otherwise insufficient."). Accordingly, because the record before the court on the request for substitute service was completely devoid of evidence that posting at the courthouse was reasonably calculated to give JD Auto notice of the suit, it fails to meet due process requirements. *See Miramontes*, 648 S.W.3d at 601 ("[I]f notice is not meaningful, constitutional due process requirements are not satisfied.").

Not only does the record fail to support the contention that posting at the courthouse would be reasonably effective to give it notice, as JD Auto argues, it shows the opposite given that another feasible and customary substitute would have been substantially more likely to provide notice. *See Mitchell*, 649 S.W.3d at 189 (quoting *Mullane*, 339 U.S. at 315) ("The reasonableness of any chosen method of providing notice . . . 'may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.'" (cleaned up)). In these circumstances, Bell could have sought substitute service through the secretary of state under § 5.251 of the Texas Business Organizations Code. Serving the secretary of state would have been substantially more likely to provide notice to JD Auto—a business whose address was known, and where the process server was greeted each time he visited or called—as opposed to a chance encounter with a citation posted at the courthouse. *See Mitchell*, 649 S.W.3d at 189, 191.

Bell also urges us to consider the process server's 2021 affidavit filed in the bill of review action. He claims the 2021 affidavit establishes the citation was also posted at JD Auto's business address, and thus, it received notice. This evidence, however, falls outside the permissible scope of our default-judgment record. In a direct-attack bill of review, "parties may introduce affidavits,

23

depositions, testimony, and exhibits to explain what happened" in the underlying suit, including an amended proof of service. *Fid. & Guar. Ins. Co. v. Drewery Const. Co., Inc.*, 186 S.W.3d 571, 573–74 (Tex. 2006) (per curiam); *Propel Fin. Servs., LLC v. Conquer Land Utilities, LLC*, 579 S.W.3d 485, 490 n.6 (Tex. App.—Corpus Christi 2019, pet. denied). However, upon a collateral attack for voidness, our review is more tightly limited to the record before the trial court at the time it rendered the challenged judgment. *Topletz*, 2023 WL 154878, at *5 (citing *Crown Bay Mgmt., LLC v. Surface Works, Inc.*, No. 02-21-00025-CV, 2022 WL 247569, at *3 (Tex. App.—Fort Worth Jan. 27, 2022, no pet.) (mem. op.)).

Despite Bell's suggestion that *Mitchell* allows us to rely on the 2021 affidavit averring that process was also posted at JD Auto's headquarters, we disagree. To the contrary, regarding this type of extrinsic evidence, the Texas Supreme Court in *Mitchell* asserted that concerns such as manipulation and fading memories animate the courts' "application of the bar on extrinsic evidence" in a collateral attack, *other than extrinsic evidence of public records*. *Mitchell*, 649 S.W.3d at 191 (emphasis added). Here, the 2021 affidavit does not qualify as a public record as described by *Mitchell*.

Further, Bell attempts to distinguish the level of constitutional protection afforded here versus the level afforded in cases involving parental rights and property rights. We disagree with that distinction. The constitutional standard for due process protection does not erode because a case implicates money damages and not something different. *See Mitchell*, 649 S.W.3d at 188–89 ("It is well settled that these words 'require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.") (quoting *Mullane*, 339 U.S. at 313); *see also* Tex. Const. art. I, § 19 ("No citizen of this State shall be deprived of . . . property . . . except by the due course of the law of the land.").

24

Ultimately, on this record, we conclude that JD Auto conclusively established its right to summary judgment as a matter of law, while Bell did not. *See Miles*, 647 S.W.3d at 619. JD Auto's evidence of the record from the employment discrimination suit established it was never personally served with process and the trial court did not acquire personal jurisdiction over it. Specifically, Bell did not exercise reasonable diligence in attempting personal service upon JD Auto before resorting to substitute service, there was no evidence in the record to indicate that posting at the courthouse was reasonably calculated to give JD Auto notice of Bell's suit, and other forms of personal or substituted service would have been more likely to give JD Auto notice reasonably calculated to apprise it of the suit. *See PNS Stores*, 379 S.W.3d at 273. Conversely, although he filed a traditional motion for summary judgment on the same issue, Bell did not conclusively prove as a matter of law that a due process violation had not occurred. Bell's assertion of limitations as a bar to JD Auto's bill of review is irrelevant because JD Auto conclusively proved its due process rights were violated by Bell's lack of notice of the suit prior to entry of a default judgment. *See Mitchell*, 649 S.W.3d at 194 (a statute of limitations "cannot place a temporal limit on a challenge to a void judgment filed by a defendant who did not receive the type of notice to which she is constitutionally entitled.").

In sum, JD Auto conclusively established Bell's lack of (1) reasonable diligence that would have entitled him to substitute service, and (2) a substitute service method that would be reasonably effective to give JD Auto notice of the suit. *See* Tex. R. Civ. P. 106; *E.R.*, 385 S.W.3d at 564; *Mitchell*, 649 S.W.3d at 189. These due process violations allow JD Auto to prevail on its collateral attack because they establish that the employment discrimination court never acquired personal jurisdiction over it. *See E.R.*, 385 S.W.3d at 563. Because the trial court lacked personal jurisdiction over JD Auto when it entered default judgment, the default judgment is void. *See*

25

*PNS Stores*, 379 S.W.3d at 272–73 ("The record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it . . . exposes such personal jurisdictional deficiencies as to violate due process.").

For these reasons, we conclude that JD Auto was entitled to the relief it sought by its bill of review, that it prevailed on its collateral attack, and the trial court erred in granting Bell's summary judgment and denying JD Auto's competing motion. Accordingly, we sustain JD Auto's second and third issues. Because of our disposition of those issues, we do not reach the first issue. *See* Tex. R. App. P. 47.1.

### C. Bell's arguments on rehearing

#### (1) *Gill v. Hill*'s relevance

After the Supreme Court of Texas issued *Gill v. Hill*, 688 S.W.3d 863 (Tex. 2024), Bell filed a letter brief urging that *Gill*'s reasoning demonstrates errors in our prior analysis. Bell first argues *Gill* stands for the proposition that JD Auto had the burden of conclusively proving a due process violation and Bell had no burden other than to establish his limitations defense. Second, Bell claims *Gill* reiterates the Supreme Court's position that under *Dusenbery* and *Mullane*, due process does not require heroic efforts at personal service, rather, substituted service by posting is constitutionally acceptable where the known person to whom process is directed is "missing." We disagree with Bell's arguments on both counts.

Regarding the burden of proving a due process violation, there is a significant procedural difference between *Gill* and the case at hand. In *Gill*, only Hill, the defendant, moved for summary judgment, and only on limitations. Gill responded claiming a due process violation had rendered the challenged judgment void, as was asserted by its original petition, but it presented no evidence on that point. Here, in contrast, Bell moved for traditional summary judgment on limitations *and*

26

on a lack of a due process violation, giving him the burden of proving both at the summary judgment stage. Later, JD Auto moved for traditional summary judgment on the due process issue, which meant it also carried a burden to prove a due process violation. Both parties attached evidence to their pleadings. In reviewing these cross-motions, we considered the appropriate evidence offered by the parties and concluded that JD Auto conclusively established a due process violation in Bell's attempts at service of process. The procedural differences between this case and *Gill* make *Gill* inapplicable on this point.

In his second point in his letter brief, Bell contends *Gill* stands for the proposition that substitute service by posting may be constitutionally adequate in certain circumstances. Bell compares Dick to one of the "missing" property owners mentioned in the tax foreclosure suit of *Gill*. Factually, however, the circumstances are distinguishable. In this instance, the registered agent was never "missing;" rather, the evidence shows that Bell was informed that he was simply on vacation or out of the office. Moreover, JD Auto's place of business remained open and operating during the relevant period. Finally, Bell claims *Gill* authorizes consideration of evidence adduced subsequent to the granting of substitute service as proof whether service through posting was constitutionally adequate, because *Gill* states the due process analysis should consider "individualized proof regarding the ease or difficulty" with which a defendant could have been located and served. As we have stated above, in the review of a collateral attack, we are limited to consideration of evidence that was before the trial court at the time it granted the challenged default judgment. *See Topletz*, 2023 WL 154878, at *5.

### (2) Disposition of the appeal

In his motion for reconsideration, Bell maintains JD Auto is not entitled to rendition of judgment even if it showed a due process violation. Specifically, Bell argues that *Mitchell*

27

established the trial court must also assess whether JD Auto waived any complaints about personal jurisdiction through its own conduct.

We recognize that *Mitchell* remanded a claim of laches, an equitable defense to invalid service, because that claim was not earlier raised in the summary judgment motions under review. *See Mitchell*, 649 S.W.3d at 195, 197. But here, Bell did not plead nor raise laches as an equitable defense. Instead, Bell only raised a claim of unclean hands, which he also included in his motion for summary judgment. In support, Bell suggests that JD Auto's registered agent may have been evading service or he was at fault for failing to make an alternative agent for service available. As earlier described, Holt-Shirley's affidavit makes no such accusation in seeking authorization for substitute service. Unclean hands is thus not relevant to the collateral attack analysis.

Moreover, we also note that *Mitchell* explicitly "[took] no position on whether laches or any other equitable doctrine can provide a valid defense to a notice-based collateral attack on a judgment transferring property[.]" *Id.* at 196. The Texas Supreme Court in *Mitchell* recognized that *E.R.* had taken equities into account in a termination of parental rights case, citing another party's "substantial reliance interest," but then specifically distinguished a money judgment from that circumstance, noting that "a judgment debtor's post-judgment diligence may be irrelevant in cases involving a default judgment for money damages." *Id.* at 196, 197 (quoting *E.R.*, 385 S.W.3d at 569). Based on this language, we conclude that *Mitchell* does not support Bell's argument. For all these reasons, no issues remain that must be considered by the trial court, and rendition of judgment on JD Auto's motion for summary judgment is proper.

## VI. CONCLUSION

We reverse the trial court's summary judgment in favor of Bell, and we render judgment for JD Auto on its bill of review based on a violation of its due process rights. The judgment

28

vacates the 2016 default judgment and returns the parties to their original status as plaintiff and defendant in Bell's employment suit with Bell carrying the burden of proving his employment discrimination claim.

GINA M. PALAFOX, Justice

August 26, 2024

Before Alley, C.J., Palafox and Soto, JJ., and Rodriguez, C.J. (Senior Judge) (en banc)
Soto, J., concurring
Rodriguez, C.J. (Senior Judge), dissenting